### JACOB ALLEN *v.* STATE OF MISSISSIPPI.

**Verdict of the Jury — Insufficient Evidence.**

> The verdict of a jury will be set aside on consideration of the facts alone if they fail to sustain it.[1]

At the February, 1885, term of the Circuit Court of Adams county appellant, Allen, was convicted of the murder of John Coleman and sentenced to the penitentiary for life. His motion for a new trial was overruled, and he appeals.

The evidence for the State was in substance as follows: Several witnesses testified that deceased and his wife had, for some time, been on bad terms and had separated, the wife having gone

---

[1]

The point of inquiry will be not whether the verdict is clearly right, but is it manifestly wrong; and if not manifestly wrong, the verdict will not be disturbed. Waul *v.* Kirkman, 13 S. & M. 599; Prewett *v.* Coopwood, 30 Miss. 369.

Whenever the evidence leaves it indifferent which of several hypotheses is true, such evidence cannot amount to proof, however great the probability may be. In this case the evidence (being entirely circumstantial) was declared insufficient to support a verdict of conviction. Algheri *v.* State, 3 C. 584.

Power to set aside on the ground that verdict is opposed by decided preponderance of evidence is exercised with great caution. McMann *v.* State, 13 S. & M. 471.

Reluctant as this court is to disturb a verdict upon the sole ground of the sufficiency of the evidence, where there is a palpable failure of proof to sustain the verdict, it will not be allowed to stand. Harris *v.* State, 71 Miss. 462; Monroe *v.* State, 71 Miss. 196.

Where there is no error in the instructions, this court will not disturb a verdict unless under the evidence it is clearly wrong, or except in a clear case of error, prejudice, or passion. Gamblin *v.* State, 45 Miss. 658.

A conviction will not be disturbed because the jury might have acquitted. Skinner *v.* State, 53 Miss. 399.

to live on appellant's place; that deceased and defendant were at a church together and deceased was talking to his wife when defendant came up and some words passed between them and defendant made some threats against deceased and that deceased was seen the next day going toward the home of defendant and had disappeared and had never been seen since. Beverly Newton testified for the State that he saw deceased in defendant's field and defendant was with him, saw no blood or wound on deceased; saw the side of his face, it was pale; had a writ to arrest Coleman and went to defendant's house to arrest Coleman; after he got there he heard a gun shot, saw Allen within five steps of Coleman; Allen asked me what I wanted. I said I wanted no harm. Allen then ordered me out of the field. Coleman was lying on the ground with his feet toward me and his head toward Allen. Allen had a gun; he told me to get out of the field and that quick; I left immediately and a few days afterward Allen came by my field and told me that if I ever said anything about that he would do me the same way. I returned the writ to the justice of the peace, but did not tell him what I had seen. Did not tell this story until the grand jury met, did not tell anybody where the dead body was; went with two persons to hunt for the body but did not find it. I told a Mr. Boyer that all I knew about the body was from Frances Coleman. Frances Coleman told me about it on Sunday morning about three months before I told Mr. Boyer. Frances said Mike Williams told her about it. I told the grand jury that Frances told me. I told Wilson Perry about it. He promised me he would not mention it.

APPEALED from Circuit Court, Adams county, RALPH NORTH, Judge.

Reversed and remanded, June 8, 1885.

*Attorneys for appellant, Martin & Lanneau and G. F. Bowles.*

*Attorney for appellee, T. S. Ford.*

Brief of Martin & Lanneau and G. F. Bowles:

The giving of the sixth instruction for the State is assigned as error. * * *

The jury is told that if they find a witness has perjured himself, they may believe him or not, at will.   \*   \*   \*   They are told they may believe a part of his testimony and disbelieve a part. \*   \*   \*

In this case the State has admitted as to Beverly Newton that he testified willfully to a falsehood in a material matter. The record shows that the conviction must stand or fall on his testimony, and his alone.   \*   \*   \*

Apply the instructions touching the proof needed to establish the *corpus delicti* and the value of circumstantial evidence. \*   \*   \*

There is no direct testimony here of a killing at all. None certainly of a felonious killing. No one saw the killing; no one proves there was a dead body found in Allen's field. Death and felony can be predicated only from circumstances testified to by Beverly Newton. We propose to show him utterly unworthy of belief, and that even if he told the truth, what he testified to does not establish either that Coleman is dead, or that Allen killed him, or, that if he did a murder was committed.   \*   \*   \*

In view of his improbable story and the multiplied contradictions, does he establish the *Corpus delicti?*

But the *corpus delicti* must be proven to sustain a conviction. 1 Greenleaf Ev. 217; Potts *v.* State and authorities cited, 43 Miss. 472; 1 Whar. C. L. (7th ed.) 745, 746, 747; 41 Miss. 582; 33 Miss. 433; 26 Miss. 157; 1 Starke's ed. 575; 2 Hale's Pleas, C. 2900.

Brief of T. S. Ford:

The sixth instruction for the State, in connection with the fifth for the defendant, informs the jury correctly as to the law respecting the credibility of the witnesses.

The *corpus delicti* may be proven by cimcumstantial evidence as well as by direct evidence. Wills on Circumstantial Ev., 200–233; 3 Gr. on Ev., § 30.   \*   \*   \*

There is one case reported of the highest authority in which a conviction with circumstantial proof of the *corpus delicti* was upheld.

The defendant in the nighttime was seen to throw the body of his captain overboard at sea, having previously threatened to kill him. In this case the body was not found, nor was it proven

whether the captain was alive or dead when thrown over. The prisoner was executed. Wills on Circumstantial Ev. 208. In that case, the proof of the death by direct evidence was made impossible by the act of the defendant, in which respect the case at bar is analogous. * * *

OPINION.—CAMPBELL, J.:

We are not willing for the verdict to stand.

It was rendered on insufficient evidence. The evidence of *corpus delicti* is far from satisfactory.. It consists entirely of the testimony of Beverly Newton, which is so strange, so improbable, and so much contradicted, as to make it an unsafe basis for a conviction of the highest crime known to law. We know the importance attached to the finding of a jury, and hesitate long before we will disturb it, but will not shrink from the duty to do it, where, as in this case, the verdict is clearly not supported by the evidence on an essential point.

*Reversed and remanded.*